UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| CLAYTON G. WALKER, | \* | CIV 18-4015 |
| Plaintiff, | \* | |
| vs. | \* | MEMORANDUM OPINION AND ORDER |
| STEVE BARNETT, Secretary of State, in his official capacity, | \* | |
| Defendant. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff Clayton G. Walker brought this pro se lawsuit against South Dakota Secretary of State Steve Barnett, the Director of Election Services for the South Dakota Secretary of State's Office. The lawsuit challenges the constitutionality of SDCL § 12-7-1.2, which provides the requirements to select an independent candidate for lieutenant governor. In particular, Plaintiff contests the requirement in SDCL § 12-7-1.2 that, when running for governor, he select his lieutenant governor candidate prior to the circulation of his certificate of nomination. Plaintiff contends that this provision violates his rights under the Equal Protection Clause of the Fourteenth Amendment. Pending before the Court is the Defendant's Motion for Summary Judgment (Doc. 92) and Plaintiff's Motion for an Extension of Time (Doc. 90). For the following reasons, the Court grants the motion for summary judgment and denies the motion to extend time.

**PROCEDURAL HISTORY**

Walker filed this lawsuit on December 29, 2017, against then-South Dakota Secretary of State Shantel Krebs, in her personal and official capacities; South Dakota Attorney General Marty Jackley, in his personal and official capacities; and Kea Warne, the Director of Election Services for the South Dakota Secretary of State's Office, in her official capacity (Doc. 1). Walker's complaint alleged that it was unconstitutional to impose different deadlines for the selection of a lieutenant governor for an independent as opposed to a party candidate. *Id.* at 4. The complaint

additionally argued that it was unconstitutional to impose different signature requirements, with independent candidates required to gather more signatures than party candidates. *Id.*

In response, Defendants filed a Motion to Dismiss (Doc. 18), arguing, *inter alia*, that Walker had not suffered an injury in fact and thus had no standing to sue since he was not a candidate for office at the time he filed the complaint; that his arguments about signature requirements were barred by *res judicata* after Walker's previous lawsuit litigating that same issue; that the requirements were constitutional because they were authorized by the South Dakota Constitution; that the monetary damages Walker sought were barred by the Eleventh Amendment; and that the named defendants were not proper targets for litigation under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908).

On March 29, 2019, the Court issued a decision on the motion to dismiss (Doc. 31). On the issue of standing, the Court ruled that Walker did have standing to bring the case, since voters have standing to challenge ballot laws under *McLain v. Meier*, 851 F.2d 1045 (8th Cir. 1988). The Court also declined to dismiss the case on substantive grounds, stating that the fact that the challenged rules were enshrined in the South Dakota Constitution did not necessarily make them constitutional. However, the Court did rule that monetary damages were barred by the Eleventh Amendment. Additionally, the Court found that the only proper *Ex Parte Young* defendant was the South Dakota Secretary of State; therefore, the claims against Marty Jackley and Kea Warne were dismissed. Finally, the Court ruled that Walker's arguments regarding signature requirements were barred by *res judicata* after the Eight Circuit's decision in *Walker v. Gant*, 606 F. App'x 856, 856 (8th Cir. 2015). In this decision, the Eight Circuit found that South Dakota's "nominating-petition deadline and signature requirement did not severely burden Walker's associational rights, and were reasonable restrictions that advanced important state interests." *Id.*

On June 7, 2019, the remaining defendant, South Dakota Secretary of State Steve Barnett, filed a motion for summary judgment (Doc. 45). The Court then issued an opinion denying summary judgment, since the issues at play could not be ruled on until discovery had completed (Doc. 67).

Immediately after the close of discovery, on July 9, 2020, Walker filed a motion for an extension of time (Doc. 90). While Walker did not specify what he was requesting beyond "an

extension of time," he seemed to be seeking an extension of the time to conduct discovery. Defendant filed a response on July 10, 2020.

On July 15, 2020, Defendant filed a second motion for summary judgment, along with a statement of material facts and supporting memo (Docs. 92, 93, 94). Defendant argued that there is no factual issue in dispute, and that judgment as a matter of law in favor of the Defendant is appropriate. Plaintiff resisted, but the Court agrees with the Defendant.

## FACTUAL BACKGROUND

Article IV of the South Dakota Constitution requires that the offices of Governor and Lieutenant Governor be jointly elected. S.D. Const. art. IV, § 2. A candidate for lieutenant governor may be chosen either by majority vote at a party convention (for a party candidate) or by certification by an independent gubernatorial candidate (for an independent candidate). SDCL §§ 12-5-21, 12-7-1.2. In order for an independent gubernatorial candidate to circulate a petition for candidacy, that candidate must first certify a candidate for lieutenant governor. SDCL § 12-7-1.2. The gubernatorial candidate must then file a certificate of nomination with the Secretary of State. SDCL § 12-7-1. This certificate must contain a number of valid signatures equal to one percent of the total combined vote in the last gubernatorial election. *Id.* In 2022, this would require 3,392 valid signatures. Affidavit of Kea Warne (Doc. 95) ¶ 12. This certificate of nomination must then be filed no later than the last Tuesday of April before the gubernatorial election. SDCL § 12-7-1.

Conversely, to run for governor as a party candidate, a gubernatorial candidate must be nominated by majority vote at a party convention. SDCL §§ 12-5-21, 12-5-22. The candidate for lieutenant governor is nominated at the same convention. *Id.* In order to hold a party convention, a party must obtain legal recognition by filing with the Secretary of State a declaration containing a number of valid signatures equal to one percent of the total combined vote in the last gubernatorial election. *Id.* This must be filed no later than the last Tuesday of March before the primary election. *Id.* In order to maintain party recognition, the party must then receive at least 2.5 percent of the vote in one of the two prior general election cycles. SDCL § 12-1-3.

Walker has stated that he intended to run for the office of governor in 2018. Complaint at 4. However, he contends that due to the signature requirement and the deadline for certification

3

of a lieutenant governor, he was unable to run. *Id.* He brought this lawsuit seeking declaratory and injunctive relief which would prevent enforcement of these requirements. *Id.* at 3.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant is able to show "that there is no genuine dispute as to any material fact," and that "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In order to meet this burden, the movant can present evidence that there is no material factual dispute, or can show that the nonmoving party has not presented evidence sufficient to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To avoid summary judgment, "[t]he nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quotation omitted).

Which facts are considered "material" for purposes of a summary judgment motion are determined by the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The only factual disputes that may properly preclude entry of summary judgment are those "that might affect the outcome of the suit under the governing law." *Id.* (citing 9A Charles Alan Wright, et al., Federal Practice and Procedure, § 2725, at 93–95 (3d ed. 1983)).

In ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmovant and give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). All facts presented to the Court by the nonmoving party must be accepted as true if properly supported by the record. *See Beck v. Skon*, 253 F.3d 330, 332–33 (8th Cir. 2001). Moreover, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The local rules for this district require that the moving party on a motion for summary judgment submit a statement of the material facts as to which it contends there is no genuine issue

4

to be tried. D.S.D. CIV. LR 56.1(A). The opposing party must then respond to each numbered paragraph in the moving party's statement of material facts, and to identify any material facts as to which it contends there exists a genuine material issue to be tried. D.S.D. CIV. LR 56.1(B). All material facts set forth in the moving party's statement of material facts are deemed admitted if not controverted by the party opposing summary judgment. D.S.D. CIV. LR 56.1(D); *see also On Target Sporting Goods, Inc. v. Attorney General of the United States*, 472 F.3d 572, 574 (8th Cir. 2007). While pro se pleadings should be construed liberally, pro se litigants are nonetheless "not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (citing *Faretta v. California*, 422 U.S. 806, 834–35 n. 46 (1975)).

In this case, the Defendant filed a Statement of Undisputed Facts along with a supporting affidavit and exhibit (Docs. 93 and 95). While Walker did file a response to this document, none of his responsive statements directly challenge the factual assertions laid out in the Statement of Undisputed Facts. *See* Doc. 97 at 3. The factual assertions laid out almost all concern the statutory requirements imposed upon a gubernatorial candidate. Walker does not deny that any of these statutory requirements exist, but merely editorializes regarding them, arguing, for instance, that the laws impose an extreme burden upon him or that signatures must be gathered during the coldest part of the year, which burdens independent candidates. *Id.* at 3, ¶¶ 5, 12. There is no reason, therefore, not to accept as fact paragraphs 1–11 of the Statement of Undisputed Facts, which lay out the requirements for a gubernatorial candidate. *See* Doc. 93 at 1–3. The only question remaining is one of law, not of fact: are these requirements constitutional? Because there are no facts in dispute, judgment as a matter of law may be entered on this question.

## DISCUSSION

### 1. Walker's Equal Protection Claim

Plaintiff alleges that requiring an independent candidate for governor to select the lieutenant governor running mate before circulating a nominating petition violates the equal protection clause because the political parties name their candidates later in the election process. In assessing this issue, the Court considers the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" and then identifies and evaluates the "precise interests put forward by the State as justifications for the burden imposed by its rule." *Libertarian Party of N.D. v. Jaeger*, 659 F.3d 687, 693–94 (8th

Cir. 2011). "In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* at 694.

The Secretary of State has a recognized and important interest in mandating a "preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot." *Jenness v. Fortson*, 403 U.S. 431, 442 (1970). The question, then, is whether independent candidates and voters are unduly burdened by the requirement to name a lieutenant governor candidate prior to circulating a nominating petition under SDCL § 12-7-1.2. For the following reasons, the Court concludes this requirement is justified by compelling state interests, and it is not unduly burdensome.

The right to vote for a candidate of one's choosing is a crucial component of the right to vote. Nor can one easily separate laws that affect candidates from those that affect voters; to limit the ability of candidates to run for office is to limit the rights of voters to associate with a candidate of their choosing. *Bullock v. Carter*, 405 U.S. 134, 143 (1972). Any burden, therefore, that "falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the first Amendment." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

At the same time, however, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). States have a significant interest in "protecting the integrity of their political processes from frivolous or fraudulent candidacies, in ensuring that their election processes are efficient, in avoiding voter confusion caused by an overcrowded ballot, and in avoiding the expense and burden of run-off elections." *Clements v. Fashing*, 457 U.S. 957, 964–65 (1982). The regulatory schemes necessary to promote these interests will necessarily limit to some degree the right to vote for whomever one wants, but "important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Anderson*, 460 U.S. at 788.

Therefore, in order to determine whether a state's regulatory system impermissibly limits the rights of independent and third-party candidates, a court must engage in a balancing test, first considering "the character and magnitude of the asserted injury to the rights protected by the First

and Fourteenth Amendments," and then identifying and evaluating "the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* at 789. The court must then weigh "the legitimacy and strength of each of those interests" and the extent to which the state's interests necessitate the abrogation of the plaintiff's rights. *Id.*

Here, the State's claimed interest is in "protecting the integrity of [its] political processes from frivolous or fraudulent candidacies, in insuring that [its] election processes are efficient[.]" Doc. 94 at 8 (quoting *Libertarian Party of North Dakota v. Jaeger*, 659 F.3d at 697). There are many features inherent in our political system, such as "single-member districts, 'first past the post' elections, and the high costs of campaigning," which increase the barriers to entry faced by third party and independent candidates. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 362 (1997). The mere fact that a law makes it *more* difficult for an independent candidate to run does not necessarily mean that the law impermissibly burdens that candidate's rights. *Id.* Rather, the plaintiff must demonstrate that the limitations actually block independent candidates from running. *See, e.g.*, *Jaeger*, 659 F.3d at 696 (plaintiffs failed to demonstrate a clear connection between the challenged rules and the lack of independent candidates on the ballot). *Compare with Libertarian Party of South Dakota v. Krebs*, 290 F. Supp. 3d 902, 914 (D.S.D. 2018) (plaintiffs were able to show that the Constitution Party would have had candidates on the ballot in 2016 but for the state's rules). In order to be found unreasonable, a rule must "freeze the status quo by effectively barring all candidates other than those of the major parties." *Jaeger*, 659 F.3d at 694.

When courts have found early deadlines for independent candidates to be impermissibly restrictive, those courts have reasoned that independent candidates may require additional time to rally support. *See, e.g.*, *Jaeger*, 659 F.3d at 700–01. This same reasoning does not apply to the certification of a lieutenant governor. Walker does not challenge the statutory requirement that requires an independent gubernatorial candidate to seek certification, but instead only the requirement of selecting a running mate prior to certification. Were SDCL § 12-7-1.2 to be found to be unconstitutional, Walker would still need to submit his certification as a candidate by the last Tuesday in April prior to the election. SDCL § 12-7-1. Given, then, that Walker has not demonstrated that SDCL § 12-7-1.2 has kept independent candidates off the ballot, and given that there is no clear logical connection between the provision and lack of ballot access, the limitation of Walker's rights imposed by the law is minimal. The only specific burden that Walker describes

7

in his complaint is that an independent gubernatorial candidate must select a lieutenant governor running mate earlier than the political parties select their lieutenant governor candidates.

The state's interest in efficient elections, avoiding frivolous candidacies, and preventing voter confusion is one that has been repeatedly affirmed by the courts. There is no per se limitation on setting different ballot access requirements for independent candidates as opposed to party candidates; rather, it has been found to be beyond question that states "may condition access to the general election ballot by a minor-party or independent candidate upon a showing of a modicum of support among the potential voters for the office." *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986). The Supreme Court has never required "a particularized showing" of voter confusion, inefficiency, or frivolous candidates in order to reach a conclusion that a state has a valid interest in imposing limitations in order to protect these interests. *Green Party of Arkansas v. Martin*, 649 F.3d 675, 686 (8th Cir. 2011) (quoting *Munro*, 479 U.S. at 194–95).

Defendant has identified compelling interests justifying the difference between the requirements for independent and party candidates with regard to the lieutenant governor candidate. For political parties in South Dakota, the candidate for lieutenant governor is selected by majority vote at the state convention. *See* SDCL § 12-5-22. Thus, a party candidate for lieutenant governor demonstrates a modicum of support before the general election by being selected by that party at convention. In contrast, independent candidates do not participate in conventions. Instead, an independent candidate for lieutenant governor must be selected by the independent gubernatorial candidate prior to circulating the nominating petition, and both candidates must sign the petition before it is circulated. *See* SDCL § 12-7-1.2. The difference in timing regarding the selection of the lieutenant governor candidates is due to the distinctive methods by which the candidates are nominated. An independent gubernatorial candidate may circulate a nominating petition any time after December 31 before the election and the petition must be filed by the last Tuesday of April. *See* SDCL 12-7-1. For legal recognition a declaration with the same number of qualified signatures must be filed by a political party no later than the last Tuesday of March. This allows the party to then hold a party convention before the primary election. The party convention elected candidates could then face a challenge in the primary election. There can be no such primary challenge to the independent candidates. Due to the

necessarily different procedures, the time differentials established by state law are reasonable to all concerned and do help alleviate voter confusion and do promote more efficient elections.

Having both the governor and lieutenant governor candidates named on the nominating petition allows voters, if they wish, to learn what ideas the candidates support and something about the qualifications of the candidates, before signing the petition, thus alleviating voter confusion, lack of information and misinformation and promoting more efficient elections. In addition, if the independent candidates obtain the requisite number of signatures on a nominating petition, a modicum of support for both the governor and lieutenant governor candidates has been demonstrated, and they go on to the general election ballot. Requiring the independent gubernatorial candidate to select his or her lieutenant governor prior to circulating the nominating petition is justified by compelling state interests. *See* SDCL § 12-7-1.2.

Weighing all available evidence, it is clear that the state has an interest in protecting its elections, which is served by the imposition of rules that may be "necessarily arbitrary," but do not impose an unduly severe onus upon independent candidates. *Jaeger*, 659 F.3d at 694. The deadline imposed by SDCL § 12-7-1.2 meets this reasonableness standard. There is no evidence that this rule has been a but-for cause of an absence of independent candidates from a gubernatorial ballot, nor is there a particularized showing of how the law has prevented Walker's candidacy. As a result, the state's interests outweigh any burden on Walker's rights imposed by the rule.

**2. Motion to Extend Time**

Also before the Court is Walker's Motion for an Extension of Time (Doc. 90). In this motion, Walker seems to seek to extend the discovery stage of the litigation.

Once a scheduling order has been issued, it can be modified only for good cause and with the consent of the judge. FED. R. CIV. P. 16(b)(4). The Eight Circuit's standard for good cause is whether the party moving for a change to the scheduling order has been diligent "in attempting to meet the order's requirements." *Hagen v. Siouxland Obstetrics & Gynecology, P.C.*, 286 F.R.D. 423, 424–25 (N.D. Iowa 2012) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716–17 (8th Cir. 2008)).

Walker has not met this standard. He has made no showing of an attempt to meet the requirements of the scheduling order. Furthermore, he filed the motion on July 9, 2020, one day

after the close of discovery and more than two months after the Court's entry of a scheduling order on April 28, 2020. During that time Walker did not conduct any discovery other than attempting to take the deposition of Defendant Steve Barnett. There are no material facts in dispute, so that deposition, even if taken, would not have prevented this case from being solely a question of law. Finally, Walker has filed a previous motion to modify the scheduling order (Doc. 80), which the Court denied on July 1, 2020.

To establish good cause for an extension of discovery, the movant "must—at minimum—itemize the necessary discovery and explain they were not able to complete that discovery" in the time allotted. *Hagen*, F.R.D. at 425. Walker has made no such itemization, nor has he made clear what, if any, changes in his circumstances have occurred since the previous denial of his motion for a change in the scheduling order. He has therefore failed to meet the minimum requirements for such a motion to be granted.

## CONCLUSION

For the reasons set forth above, the Court concludes that there is no genuine issue of material fact and judgment for the Defendants should be entered as a matter of law. Accordingly,

**IT IS ORDERED:**

1. That the Defendant's Motion for Summary Judgment, Doc. 92, is granted with prejudice;

2. That Walker's Motion for an Extension of Time, Doc. 90, is denied.

Dated this 3rd day of September, 2020.

BY THE COURT:

_____
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK
_____